UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

EDDIE COTTO,                                             :

                  Plaintiff,                 :

            -against-                   :

DETECTIVES NELSON PABON, LUIS RAMOS,    :
UNDER COVER JOHN DOE SHIELD #1133 &
SGT. HARRINGTON,                                        :

                  Defendants.              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

07 Civ. 7656 (AJP)

**OPINION AND ORDER**

**ANDREW J. PECK, United States Magistrate Judge:**

        Pro se plaintiff Eddie Cotto brings this action pursuant to 42 U.S.C. § 1983, alleging false arrest, excessive force and malicious prosecution.  (Dkt. No. 4: Am. Compl.; Dkt. No. 33: 2d Am. Compl.)

        Presently before the Court is defendants' summary judgment motion.  (Dkt. No. 39: Defs. Notice of Motion, Defs. Rule 56.1 Stmt., Defs. Rule 56.2 Stmt., Francolla Aff.; Dkt. No. 40: Defs. Br.; Dkt. No. 45: Defs. Reply Br.)  Cotto has opposed the motion.  (Dkt. No. 46: Cotto Opp. Br.)  The parties have consented to decision of this case by a Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (Dkt. No. 26.)

        For the reasons set forth below, defendants' summary judgment motion is GRANTED.

2

### FACTS

Plaintiff Eddie Cotto was arrested on February 3, 2004.  (Dkt. No. 39: Defs. Rule 56.1 Stmt. ¶ 6; Dkt. No. 4: Am. Compl. ¶¶ 4, 17, 22; Dkt. No. 33: 2d Am. Compl. ¶ 1.)[1/]  At 12:30 p.m. that day, Cotto was eating lunch at a Chinese restaurant at 1759 Lexington Avenue in Manhattan when an undercover detective approached Cotto and Artis Steward – who sat next to Cotto – to ask Steward if he "was working for 'some manteca' (Spanish for heroin)."  (Defs. Rule 56.1 Stmt. ¶¶ 7, 9; Am. Compl. ¶¶ 17, 22 & Ex. E: Undercover's Trial Testimony ["Tr."] at 40-41, 99; Dkt. No. 46: Cotto Opp. Br. at 5 ¶ 11.)  The undercover believed Cotto was Steward's "boss."  (Am. Compl. Ex. E: Undercover Tr. at 41, 124-25.)  As the undercover waited for Steward to reply, Cotto "made a 'nod' gesture."  (Defs. Rule 56.1 Stmt. ¶ 10; Am. Compl. ¶¶ 17, 22 & Ex. E: Undercover Tr. at 99-102.)  Steward told the undercover to "come outside with" him, and they went to 1760 Lexington Avenue.  (Defs. Rule 56.1 Stmt. ¶ 11; Am. Compl. ¶¶ 18, 22 & Ex. E: Undercover Tr. at 102, 105, 124.)  Steward told the undercover, "'[t]hat's my boss in there.'"  (Am. Compl. Ex. E: Undercover Tr. at 124-25.)  Cotto remained in the restaurant, eating.  (Am. Compl. ¶¶ 18, 22.)

Steward and the undercover went upstairs to the eleventh floor, where the undercover gave Steward prerecorded buy money and Steward gave the undercover five glassine envelopes containing heroin.  (Defs. Rule 56.1 Stmt. ¶¶ 12-13; Am. Compl. ¶¶ 18-19 & Ex. E: Undercover Tr. at 50-52, 105-06.)  When the undercover got out of the elevator in the building's lobby, he saw Cotto.  (Defs. Rule 56.1 Stmt. ¶ 14; Am. Compl. ¶ 19 & Ex. E: Undercover Tr. at 52-53, 106-07.)  Cotto

---

[1/]     The facts concerning Cotto's arrest are derived mostly from Cotto's amended complaint, with some additions from the undercover's testimony at Cotto's criminal trial.  Defendants' summary judgment motion did not include any affidavits from the defendant officers.

lived in that building.  (See Am. Compl. ¶¶ 6, 22; 2d Am. Compl. ¶ 2.)  Cotto contends that he was "returning to his residence at 1760 Lexington Avenue."  (Am. Compl. ¶ 22.)  The undercover asked Steward if he could talk to Steward's boss, meaning Cotto, and Steward replied, "no, no, no just talk to me."  (Defs. Rule 56.1 Stmt. ¶ 15; Am. Compl. ¶ 20 & Ex. E: Undercover Tr. at 108-09.)  As the undercover held the elevator door open in the lobby, Cotto said, "yo, yo, slim, let that elevator door go."  (Defs. Rule 56.1 Stmt. ¶ 16; Am. Compl. ¶ 20 & Ex. E: Undercover Tr. at 109.)  Cotto contends that the undercover "assumed that [Cotto] was talking to him," but that the undercover "confuse[d] [Cotto's] statement as if it had been directed to him." (Defs. Rule 56.1 Stmt. ¶¶ 17-18; Am. Compl. ¶¶ 20, 22.)

Detectives Pabon and Ramos arrested Cotto.  (Am. Compl. ¶¶ 7-8, 20.)  The officers did not find any drugs or pre-recorded buy money on Cotto.  (Am. Compl. ¶¶ 8, 20 & Ex. E: Undercover Tr. at 112-13; Am. Compl. Ex. G: Ramos Tr. at 226.)  On February 6, 2004, a grand jury indicted Cotto for third degree criminal sale of a controlled substance.  (Defs. Rule 56.1 Stmt. ¶ 19; Dkt. No. 39: Francolla Aff. Ex. C: Indictment.)  On January 31, 2005, Cotto was tried and found not guilty.  (Dkt. No. 4: Am. Compl. ¶ 20 & Ex. A: Certificate of Disposition Acquittal.)

**Cotto's Federal § 1983 Complaint**

On or about May 6, 2007, Cotto filed his present § 1983 complaint, alleging false arrest, excessive force and malicious prosecution.  (Dkt. No. 2: Compl.)  Cotto filed an amended complaint on October 1, 2007 (Dkt. No. 4: Am. Compl.; Dkt. No. 39: Defs. Rule 56.1 Stmt. ¶ 2) and a second amended complaint on or about February 7, 2008  (Dkt. No. 33: 2d Am. Compl.; see also Dkt. No. 23: 2/5/08 Order).

Cotto alleged that Detective Pabon, Detective Ramos, Sgt. Harrington and the undercover officer falsely arrested and imprisoned Cotto in violation of the Fourth Amendment. (2d Am. Compl. at 4 Wherefore ¶¶ 1-2.) Cotto also asserted a claim for malicious prosecution. (2d Am. Compl. at 4 Wherefore ¶ 4.) Cotto further alleged that in the course of arresting Cotto, Detective Pabon "pushed [Cotto] into a wall of the building therein causeing [sic] injury to his lower back area and injurring [sic] his spine which to date [Cotto] still suffers from." (2d Am. Compl. at 3 ¶ 7.) At his April 3, 2008 deposition, however, Cotto replied "[n]o" when asked whether he ever had any physical contact with Detective Pabon, Detective Ramos or Sgt. Harrington in connection with his 2004 arrest. (Defs. Rule 56.1 Stmt. ¶¶ 29-31; Dkt. No. 39: Francolla Aff. Ex. D: Cotto Dep. at 183.)

**Facts Regarding the Statute of Limitations:  Cotto's Attempts to Obtain Counsel**

Cotto claims that in January 2005 he retained Christopher D. Galiardo, Esq. to represent him to bring a § 1983 action. (Dkt. No. 39: Defs. Rule 56.1 Stmt. ¶ 20; Dkt. No. 4: Am. Compl. ¶ 2.) Cotto concedes, however, that Galiardo sent him a letter on November 30, 2006, indicating that Galiardo's firm, Myers & Galiardo, would not represent Cotto. (Defs. Rule 56.1 Stmt. ¶ 21; Am. Compl. ¶ 2 & Ex. C: 11/30/06 Galiardo Ltr.)[2/] Cotto maintains that he did not receive Galiardo's November 30, 2006 letter until Cotto's wife forwarded it to him on or about February 15, 2007. (Am. Compl. ¶ 2; Defs. Rule 56.1 Stmt. ¶ 22.) Cotto attributes this delay to a circuitous delivery:  Galiardo sent the letter to Cotto's mother, who deposited it in Cotto's wife's mailbox, but

---

[2/]    The letter noted that the firm had tried to contact Cotto several times over the prior year but had not heard back from Cotto, and that the firm was aware of Cotto's arrest and conviction on another drug sale. (Am. Compl. Ex. C: 11/30/06 Galiardo Ltr.)  The letter also reminded Cotto that, "[a]s previously explained to you, Federal Court has a Statute of Limitations for filing the types of actions you are considering" and that limitations period "is currently running." (Id.)

she was traveling from early December until around February 15, 2007.  (Am. Compl. ¶ 2 & Ex. D: 9/20/07 Aff. of Darlene Vines, Cotto's wife.)  Prior to receiving the November 30, 2006 letter, Cotto never contacted Galiardo to explain that he was incarcerated (for another crime), and did not provide Galiardo with his prison address.  (Defs. Rule 56.1 Stmt. ¶ 23; Dkt. No. 39: Francolla Aff. Ex. D: Cotto Dep. at 213.)

Cotto's wife "returned [home] on or around the 15th day of February, 2007, which was when she forwarded the 11/30/-06 [sic] letter" to Cotto.  (Am. Compl. ¶ 2; Defs. Rule 56.1 Stmt. ¶ 22.)  Cotto claims that he immediately contacted Galiardo after receiving the letter.  (Am. Compl. ¶ 2.)  On February 28, 2007, Galiardo reiterated, by letter, that he would not represent Cotto in this action.  (Am. Compl. ¶ 2 & Ex. B: 2/28/07 Galiardo Ltr.; Defs. Rule 56.1 Stmt. ¶ 24.)  Galiardo again advised Cotto that his firm had not filed a complaint on Cotto's behalf, and that as they had previously advised Cotto, "[g]enerally, in Federal Court there is a three (3) year SOL [Statute of Limitations] for false arrest/malicious prosecution claims which may be tolled (extended) by the time a claimant remained in custody following an arrest awaiting trial."  (Am. Compl. ¶ 2 & Ex. B: 2/28/07 Galiardo Ltr.; Defs. Rule 56.1 Stmt. ¶¶ 24-25.)

Cotto's complaint alleges that Galiardo "completely or in part misrepresented, misinformed and/or deceived" Cotto.  (Am. Compl. ¶ 2.)  However, when asked at his deposition whether the Galiardo firm or anyone else made any misrepresentations or misinformed or deceived him regarding the filing of his lawsuit, Cotto replied "[n]o."  (Defs. Rule 56.1 Stmt. ¶¶ 26-27; Francolla Aff. Ex. D: Cotto Dep. at 225-26.)

Cotto claims that to prepare his pro se complaint, he applied to obtain assistance from the correctional facility's law library, but that due to the library's "waiting period" and "very limited

schedual" [sic], it took Cotto "at least ten (10) weeks to do research, type the complaint and complete all the necessary forms."  (Am. Compl. ¶ 3.)

## **ANALYSIS**

## I.   **SUMMARY JUDGMENT STANDARD**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall "be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); Lang v. Retirement Living Pub. Co., 949 F.2d 576, 580 (2d Cir. 1991).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment.  See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).  The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof.  See, e.g., Celotex Corp. v. Catrett, 477 U.S. at 323, 106 S. Ct. at 2552-53.

To defeat a summary judgment motion, the non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  Instead, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e);  accord, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587,

106 S. Ct. at 1356; Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (At summary judgment, "[t]he time has come . . . 'to put up or shut up.'") (citations omitted), cert. denied, 540 U.S. 811, 124 S. Ct. 53 (2003).

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S. Ct. at 2513.[3/] The Court draws all inferences in favor of the nonmoving party only after determining that such inferences are reasonable, considering all the evidence presented. See, e.g., Apex Oil Co. v. DiMauro, 822 F.2d 246, 252 (2d Cir.), cert. denied, 484 U.S. 977, 108 S. Ct. 489 (1987). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 37.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact. See, e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932, 107 S. Ct. 1570 (1987). To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S. Ct. at 2510. While "disputes over facts that might affect the outcome of the suit under the governing law will properly

---

[3/]     See also, e.g., Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 36; Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d at 1223.

preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will

not be counted." Id. at 248, 106 S. Ct. at 2510 (citations omitted); see also, e.g., Knight v. U.S. Fire

Ins. Co., 804 F.2d at 11-12.

"The Court recognizes that it must 'must extend extra consideration' to pro se

plaintiffs" and that "pro se parties are to be given special latitude on summary judgment motions."

Salahuddin v. Coughlin, 999 F. Supp. 526, 535 (S.D.N.Y. 1998) (Peck, M.J.) (citations & internal

quotations omitted); see, e.g., McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (a pro se

party's pleadings should be read liberally and interpreted "'to raise the strongest arguments that they

suggest'").[4]  "Nevertheless, proceeding pro se does not otherwise relieve a litigant from the usual

requirements of summary judgment, and a pro se party's 'bald assertion,' unsupported by evidence,

is not sufficient to overcome a motion for summary judgment." Cole v. Artuz, 93 Civ. 5981, 1999

WL 983876 at *3 (S.D.N.Y. Oct. 28, 1999) (citing cases).[5]

---

[4]  See also, e.g., Ferran v. Town of Nassau, 471 F.3d 363, 369 (2d Cir. 2006); Fuller v. Armstrong, 204 Fed. Appx. 987, 988 (2d Cir. 2006), cert. denied, 128 S. Ct. 209 (2007); Gildor v. United States Postal Serv., 179 Fed. Appx. 756, 758 (2d Cir. 2006); Porter v. Coughlin, 421 F.3d 141, 144 n.2 (2d Cir. 2005); Hemphill v. New York, 380 F.3d 680, 687 (2d Cir. 2004); Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003); Johnson v. Buffalo Police Dept., 46 Fed. Appx. 11, 12 (2d Cir. 2002), cert. denied, 539 U.S. 959, 123 S. Ct. 2645 (2003).

[5]  See also, e.g., United States v. Acomb, No. 99-6308, 216 F.3d 1073 (table), 2000 WL 899482 at *1 (2d Cir. June 29, 2000); James v. Phillips, 05 Civ. 1539, 2008 WL 1700125 at *3 (S.D.N.Y. Apr. 9, 2008); Thompson v. Tracy, 00 Civ. 8360, 2008 WL 190449 at *5 (S.D.N.Y. Jan. 17, 2008); Bunting v. Nagy, 452 F. Supp. 2d 447, 454 (S.D.N.Y. 2006); Rodriguez v. McClenning, 399 F. Supp. 2d 228, 234 & n.52 (S.D.N.Y. 2005); Pack v. Artuz, 348 F. Supp. 2d 63, 78 (S.D.N.Y. 2004); Rector v. Sylvania, 285 F. Supp. 2d 349, 353 (S.D.N.Y. 2003); Walker v. Vaughan, 216 F. Supp. 2d 290, 296-97 (S.D.N.Y. 2002); Hussein v. The Waldorf-Astoria, 134 F. Supp. 2d 591, 596 (S.D.N.Y. 2001), aff'd, 31 Fed. Appx. 740 (2d Cir. 2002).

## II.  DEFENDANTS' SUMMARY JUDGMENT MOTION IS GRANTED AS TO COTTO'S FALSE ARREST CLAIM, ON QUALIFIED IMMUNITY GROUNDS

### A.  Cotto's False Arrest Claim Is Not Time-Barred

The statute of limitations for a § 1983 action is three years.  See, e.g., Palmer v. Stuart, 274 Fed. Appx. 58, 58 (2d Cir. 2008); McKithen v. Brown, 481 F.3d 89, 100 n.12 (2d Cir. 2007), cert. denied, 128 S. Ct. 1218 (2008); Cioce v. County of Westchester, 211 Fed. Appx. 18, 19 (2d Cir. 2006); Walker v. Jastremski, 430 F.3d 560, 561 (2d Cir. 2005), cert. denied, 547 U.S. 1101, 127 S. Ct. 1887 (2006); Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2005); Warren v. Altieri, 59 Fed. Appx. 426, 427 (2d Cir. 2003) (Plaintiff's "§ 1983 action is governed by New York's three-year statute of limitations as set out in N.Y. C.P.L.R. § 214, the provision applicable to actions for personal injury."); Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002), cert. denied, 538 U.S. 922, 123 S. Ct. 1574 (2003); Paige v. Police Dep't, 264 F.3d 197, 199 n. 2 (2d Cir. 2001); Connolly v. McCall, 254 F.3d 36, 40-41 (2d Cir. 2001).[6/]

"Federal law governs the determination of the accrual date (that is, the date the statute of limitations begins to run) for purposes of the statute of limitations in a section 1983 action." Ormiston v. Nelson, 117 F.3d 69, 71 (2d Cir. 1997); accord, e.g., Cantor Fitzgerald Inc. v. Lutnick,

---

[6/]  See also, e.g., Newton v. City of New York, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008); Dunn v. DuBois, 08 Civ. 1846, 2008 WL 1816427 at *1 (S.D.N.Y. Apr. 21, 2008); Espada v. Schneider, 522 F. Supp. 2d 544, 550 n.7 (S.D.N.Y. 2007); Hill v. Melvin, 05 Civ. 6645, 2006 WL 1749520 at *5 (S.D.N.Y. June 27, 2006) (Peck, M.J.); Denis v. N.Y.S. Dep't of Corr. Servs., 05 Civ. 4495, 2006 WL 217926 at *11 (S.D.N.Y. Jan 30, 2006) (Peck, M.J.), report & rec. adopted, 2006 WL 406313 (S.D.N.Y. Feb. 22, 2006) (Kaplan, D.J.); Diallo v. Williams, 04 Civ. 4556, 2006 WL 156158 at *2 (S.D.N.Y. Jan. 20, 2006); Allan v. City of New York, 386 F. Supp. 2d 542, 548 (S.D.N.Y. 2005); Mitchell v. Home, 377 F. Supp. 2d 361, 371 (S.D.N.Y. 2005); Dawkins v. Jones, 03 Civ. 0068, 2005 WL 196537 at *8 (S.D.N.Y. Jan. 31, 2005) (Peck, M.J.).

10

313 F.3d 704, 710-11 (2d Cir. 2002); Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994), cert.

denied, 516 U.S. 808, 116 S. Ct. 53 (1995).  In general under federal law, "the time of accrual [is]

that point in time when the plaintiff knows or has reason to know of the injury which is the basis of

his action."  Covington v. City of New York, 171 F.3d 117, 121 (2d Cir.) (quotations omitted), cert.

denied, 528 U.S. 946, 120 S. Ct. 363 (1999).[7/]  As the Second Circuit noted in Covington, however,

"in the case of some actions brought under § 1983, this general rule is subject to the Supreme Court's

analysis in Heck" v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364 (1994).[8/]  Covington v. City of New

York, 171 F.3d at 121.  In Heck, the Supreme Court held as follows:

> We hold that, in order to recover damages for allegedly unconstitutional
> conviction or imprisonment, or for other harm caused by actions whose unlawfulness
> would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the
> conviction or sentence has been reversed on direct appeal, expunged by executive
> order, declared invalid by a state tribunal authorized to make such determination, or
> called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C.
> § 2254.  A claim for damages bearing that relationship to a conviction or sentence
> that has *not* been so invalidated is not cognizable under § 1983.  Thus, when a state
> prisoner seeks damages in a § 1983 suit, the district court must consider whether a
> judgment in favor of the plaintiff would necessarily imply the invalidity of his
> conviction or sentence; if it would, the complaint must be dismissed unless the
> plaintiff can demonstrate that the conviction or sentence has already been invalidated.
> But if the district court determines that the plaintiff's action, even if successful, will
> *not* demonstrate the invalidity of any outstanding criminal judgment against the
> plaintiff, the action should be allowed to proceed, in the absence of some other bar
> to the suit.

---

[7/]    See also, e.g., Assegai v. Bloomfield Bd. of Educ., 165 Fed. Appx. 932, 934 (2d Cir. 2006); Washington v. County of Rockland, 373 F.3d 310, 317 (2d Cir. 2004); Ormiston v. Nelson, 117 F.3d at 71; Eagleston v. Guido, 41 F.3d at 871; Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir. 1980), cert. denied, 450 U.S. 920, 101 S. Ct. 1368 (1981).

[8/]    Surprisingly, the defendants do not discuss Heck or Covington in arguing that Cotto's false arrest claim should be barred on statute of limitations grounds, despite Heck and Covington's clear applicability to the facts of this case.

* * *

Under our analysis the statute of limitations poses no difficulty while the state challenges are being pursued, since the § 1983 claim has not yet arisen.  Just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated.

Heck v. Humphrey, 512 U.S. at 486-87, 489-90, 114 S. Ct. at 2372-73, 2374 (citations & fns. omitted, emphasis added); see also, e.g., Muhammad v. Close, 540 U.S. 749, 751, 124 S. Ct. 1303, 1304 (2004); Henry v. Purvis, 111 Fed. Appx. 622, 624 (2d Cir. 2004); Morris v. N.Y. City Police Dep't, 59 Fed. Appx. 421, 422 (2d Cir. 2004); Jenkins v. Haubert, 179 F.3d 19, 24-25 (2d Cir. 1999); Amaker v. Weiner, 179 F.3d 48, 51, 52 (2d Cir. 1999) ("[W]here the viability of the plaintiff's claims depends on his conviction being invalidated, the statute of limitations begins to run upon the invalidation, not the time of the alleged government misconduct."); Duamutef v. Morris, 956 F. Supp. 1112, 1115, 1117-18 (S.D.N.Y.1997).

The Second Circuit in Covington applied Heck to a false arrest claim:

[I]n order to determine whether [plaintiff's] false arrest claim accrued at the time of the arrest or only when the prosecution against him on the charges relating to that arrest was dismissed, the question is whether "a judgment in favor of [[plaintiff] in the § 1983 action] would necessarily imply the invalidity of" any conviction or sentence that might have resulted from the prosecution of [plaintiff] resulting from the arrest.

Covington v. City of New York, 171 F.3d at 122 (quoting Heck v. Humphrey, 512 U.S. at 487, 114 S. Ct. at 2372).[9]

_____

[9]    Accord, e.g., Morris v. New York City Police Dep't, 59 Fed. Appx. at 422 ("[I]f plaintiff can show that a conviction obtained against him would have depended upon a false arrest, a Section 1983 claim arising from the false arrest does not accrue until such a conviction is no

(continued...)

The rationale for barring § 1983 false arrest claims while criminal proceedings are ongoing is to prevent inconsistency between the civil and criminal proceedings. See, e.g., Covington v. City of New York, 171 F.3d at 124 ("So long as the criminal case remained pending . . . a parallel § 1983 case based upon a false arrest and wrongful search claim would create the distinct possibility of an inconsistent result if the prosecutor's evidence was dependent upon a valid arrest. That is the reason why the § 1983 cause of action could not accrue during the pendency of the criminal case."); see also, e.g., Heck v. Humphrey, 512 U.S. at 484, 114 S. Ct. at 2371 ("This requirement [that the criminal proceeding terminate in favor of the accused] avoids parallel litigation over the issues of probable cause and guilt . . . and it precludes the possibility of . . . two conflicting resolutions arising out of the same or identical transaction.") (quotations omitted).

Covington instructed how Heck applies to the accrual of a false arrest claim for statute of limitation purposes:

> [T]he question in this case is when [plaintiff's] false arrest claim accrued so as to trigger the statute of limitations.
>
> We hold that the answer to this question turns on whether a judgment in [plaintiff's] favor on the false arrest claim would have undermined the validity of any potential conviction in the criminal proceedings against him. If a favorable

---

9/      (...continued)
longer a possibility."); see also, e.g., Black v. Coughlin, 76 F.3d 72, 75 (2d Cir. 1996); Woods v. Candela, 47 F.3d 545, 546 (2d Cir.), cert. denied, 516 U.S. 808, 116 S. Ct. 54 (1995); Stewart v. City of New York, 06 Civ. 15490, 2008 WL 1699797 at *6 (S.D.N.Y. Apr. 9, 2008); Miro v. City of New York, 05 Civ. 10570, 2007 WL 549418 at * 5 (S.D.N.Y. Feb. 21, 2007); Hill v. Melvin, 2006 WL 1749520 at *7; Stephenson v. Rosa, 03 Civ. 8503, 2006 WL 464081 at *1 (S.D.N.Y. Feb. 24, 2006); Reid v. City of New York, 00 Civ. 5164, 2004 WL 626228 at *8-9 (S.D.N.Y. Mar. 29, 2004), report & rec. adopted, 2004 WL 1488194 (S.D.N.Y. July 1, 2004); Lucas v. Novogratz, 01 Civ. 5445, 2002 WL 31844913 at *3 (S.D.N.Y. Dec. 18, 2002); McAllister v. New York City Police Dep't, 49 F. Supp. 2d 688, 702-03 (S.D.N.Y. 1999) (Wood, D.J. & Peck, M.J.) (& cases cited therein).

determination on the false arrest claim would in fact have undermined the validity of any potential conviction against [plaintiff] resulting from the state criminal proceedings, then [plaintiff's] false arrest claim would not accrue until those criminal proceedings terminated. . . .

Covington v. City of New York, 171 F.3d at 119 (citations omitted).

Recovery in a § 1983 false arrest action clearly undermines the integrity of criminal proceedings when the prosecution's "only evidence for conviction was obtained pursuant to an arrest." Covington v. City of New York, 171 F.3d at 123 ("[I]n a case where the only evidence for conviction was obtained pursuant to an arrest, recovery in a civil case based on false arrest would necessarily impugn any conviction resulting from the use of that evidence."); see, e.g., Stephenson v. Rosa, 2006 WL 464081 at *1 ("[I]f a plaintiff's claim is grounded in an alleged Fourth Amendment violation, and the evidence obtained through the alleged violation is the *sine qua non* of the prosecution's case, then the statute of limitations begins to run on the date of dismissal of the conviction. . . . If, on the other hand, there is independent evidence supporting the conviction – separate and apart from the evidence alleged to be the fruit of the poison tree – then the date of accrual is the date of arrest."); Reid v. City of New York, 2004 WL 626228 at *8 ("The date on which a false arrest claim accrues is determined by considering 'whether the prosecution could have obtained a conviction without using the evidence tainted by the false arrest. If so, the claim accrues at the time of arrest. If not, the [claim] accrues when the prosecution ends.' . . . In other words, if evidence obtained as a result of the arrest was necessary for a conviction, then the cause of action

14

for false arrest does not accrue until the prosecution is terminated.  If the allegedly tainted evidence

was not necessary, then the cause of action accrues at the time of arrest.").[10]

Here, the record shows that defendants did not obtain any physical evidence pursuant

to Cotto's arrest.  It is undisputed that Det. Ramos "searched [Cotto], patted him down, went inside

all of his coat, pants, jacket's [sic] pockets, yet found no drug or pre-marked money." (Dkt. No. 4:

Am. Compl. ¶ 8 & Ex. G: Ramos Tr. at 226.)  The only evidence before this Court regarding Cotto's

arrest is the detectives' brief observations of Cotto in the Chinese restaurant and in the lobby of 1760

Lexington Avenue.  (See pages 2-3 above.)  While Cotto has submitted very limited excerpts of the

officers' trial testimony (Am. Compl. Exs. E-G), this Court is basically in the dark as to the evidence

at Cotto's trial; on this motion, defendants have not indicated whether the government presented any

evidence at Cotto's trial that was independent of the observations that led to Cotto's arrest.  Thus, this

Court cannot determine whether a finding in favor of Cotto on his § 1983 false arrest claim would

have "necessarily impl[ied] the invalidity of his conviction or sentence," were he to have been

convicted or sentenced in the underlying criminal prosecution.  Covington v. City of New York, 171

F.3d at 122 (quoting Heck v. Humphrey, 512 U.S. at 487, 114 S. Ct. at 2372).  This Court, therefore,

---

[10]     See also, e.g., Kelly v. Lohan, No. 08 CV 2205, 2008 WL 4693317 at *2 (E.D.N.Y. Oct. 23, 2008) ("[False arrest c]laims accrue at the time of the arrest and search, except in cases where prevailing on the § 1983 claim would necessarily imply that the plaintiff's conviction was unlawful; in that event, the cause of action does not accrue until the conviction has been invalidated.") (citations omitted); Miro v. City of New York, 2007 WL 549418 at *5; Lucas v. Novogratz, 2002 WL 31844913 at *3 ("[T]he Second Circuit has made clear that Heck does not preclude a claim for false arrest under § 1983 unless the sole basis for the conviction was evidence seized as a result of the illegal arrest."); compare, e.g., Warren v. Altieri, 59 Fed. Appx. at 427 ("Plaintiff's allegations of assault [by police] are unrelated to the criminal charges underlying the warrant that prompted his arrest.  Accordingly, Covington is inapplicable" and the statute of limitations began to run as of the time of the assault.).

cannot determine whether Cotto's false arrest claim is timely, because the Court lacks the necessary evidence to determine whether the statute of limitations should run from the time of arrest, or from the date that the jury found Cotto not guilty in his criminal prosecution.  See, e.g., Covington v. City of New York, 171 F.3d at 123 (Second Circuit "unable to determine whether success on Covington's Section 1983 false arrest claim would necessarily imply the invalidity of a possible conviction resulting from the criminal proceeding[ ] instituted against him based on that arrest" without information as to available evidence which might have been introduced against him in the criminal proceeding); Kilgore v. Kaufman, No. 06-CV-612, 2008 WL 4426616 at *3-4 (N.D.N.Y. Sept. 25, 2008) (False arrest claim accrues on date of dismissal of indictment, not date of arrest, because "[b]ased upon even the limited factual record before the Court, there is nothing here to suggest that there was any evidence to prosecute [plaintiff] . . . independent of the evidence obtained by defendants via the alleged Fourth Amendment violations."); Perez v. City of New York, No. 01-CV-5384, 2007 WL 14486 at *8 (E.D.N.Y. Jan. 3, 2007) (denying defendants' summary judgment motion on false arrest claim because "[d]efendants have not met their burden of showing that there is no genuine issue of fact with respect to their statute of limitations defense" where "[d]efendants d[id] not discuss the evidence which was presented against plaintiff at his [criminal] trial" to allow the court to determine whether "recovery on any of plaintiff's § 1983 claims . . . would have necessarily implied the invalidity of his conviction.").

This Court, therefore, will date Cotto's false arrest claim from his dismissal, and will not bar the claim on statute of limitations grounds.

16

**B.    Defendants Are Granted Summary Judgment Based On Qualified Immunity As To Cotto's § 1983 False Arrest Claim**

Defendants also argue that regardless of the statute of limitations issue, the police had probable cause to arrest Cotto, and therefore that defendants are entitled to summary judgment on the merits of Cotto's false arrest claim.  (Dkt. No. 40: Defs. Br. at 8-11; Dkt. No. 45: Defs. Reply Br. at 7-8.)  "Under New York law, the existence of probable cause is an absolute defense to a false arrest claim." Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006).[11/]  Probable cause to arrest "is not a particularly demanding standard," Dudley v. Pendagrass, No. 06 CV 216, 2008 WL 4790489 at *5 (E.D.N.Y. Oct. 31, 2008),[12/] and "exists when the arresting officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004) (quoting Weyant v. Okst, 101 F.3d at 852).[13/]

---

[11/]    See also, e.g., Maron v. County of Albany, 166 Fed. Appx. 540, 542 (2d Cir. 2006); Tartaglione v. Pugliese, 89 Fed. Appx. 304, 305 (2d Cir. 2004); Caldarola v. Calabrese, 298 F.3d 156, 161 (2d Cir. 2002); Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996); Williams v. Deighan, No. 05-CV-5596, 2008 WL 4534013 at *5 (E.D.N.Y. Oct. 8, 2008); Li v. Aponte, 05 Civ. 6237, 2008 WL 4308127 at *9 (S.D.N.Y. Sept. 16, 2008); Heckler v. Montgomery, 567 F. Supp. 2d 471, 476 (S.D.N.Y. June 17, 2008).

[12/]    See also, e.g., Williams v. Deighan, 2008 WL 4534013 at *6; Chodkowski v. City of New York, 06 Civ. 7120, 2007 WL 2717872 at *4 (S.D.N.Y. Sept. 11, 2007); United States v. Scala, 388 F. Supp. 2d 396, 401 (S.D.N.Y. Sept. 28, 2005).

[13/]    Accord, e.g., Jaegly v. Couch, 439 F.3d at 152; Boyd v. City of New York, 336 F.3d 72, 75-76 (2d Cir. 2003); Caldarola v. Calabrese, 298 F.3d at 162; Curley v. Village of Suffern, 268 F.3d 65, 69-70 (2d Cir. 2001); Marshall v. Sullivan, 105 F.3d 47, 54 (2d Cir. 1996).

While the basic facts appear largely undisputed, the inferences from those facts, whether the officers' observations of Cotto – in light of his residence in the building – supplied probable cause is a factual issue that should be determined by the jury, not the Court on a summary judgment motion.  See, e.g., Gomez v. City of New York, 05 Civ. 2147, 2007 WL 5210469 at *6 (S.D.N.Y. May 28, 2007) (denying summary judgment on false arrest claim because "a jury could find that [the police] lacked probable cause to arrest" plaintiff, and since "[p]robable cause may only 'be determin[ed] as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers.'"), report & rec. adopted, 2008 WL 3833811 (S.D.N.Y. Aug. 14, 2008); Williams v. City of New York, 05 Civ. 10230, 2007 WL 2214390 at *10 (S.D.N.Y. July 26, 2007) ("Because the existence of probable cause turns on disputed issues of fact, the issue of probable cause is not amenable to disposition by summary judgment."); Sutton v. Duguid, No. 05-CV-1215, 2007 WL 1456222 at *8-9 (E.D.N.Y. May 16, 2007) (denying summary judgment on false arrest claim because "[i]f a jury credits plaintiff's version of the events . . . then a reasonable jury could find that defendants lacked probable cause to believe that plaintiff resisted arrest.").

Defendants also moved for summary judgment against Cotto's claims on qualified immunity grounds, claiming that defendants' actions were "objectively reasonable" and that "none of the defendant officers have violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  (Dkt. No. 40: Defs. Br. at 20).

Qualified immunity "shields police officers acting in their official capacity from suits for damages under 42 U.S.C. § 1983, unless their actions violate clearly-established rights of which an objectively reasonable official would have known." Thomas v. Roach, 165 F.3d 137, 142 (2d Cir.

1999); see, e.g., Jones v. Parmley, 465 F.3d 46, 55 (2d Cir. 2006); Holeman v. City of New London, 425 F.3d 184, 189 (2d Cir. 2005); Rogers v. City of Amsterdam, 303 F.3d 155, 158 (2d Cir. 2002).[14]

An officer who acts without probable cause, therefore, is entitled to qualified immunity from a suit for false arrest (or malicious prosecution) if he can show that there was at least "arguable probable cause," which "exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'"  Escalera v. Lunn, 361 F.3d at 743.[15]  "Thus, the analytically distinct test for qualified immunity is more favorable to the officers than the one for probable cause; 'arguable probable cause' will suffice to confer qualified immunity for the arrest." Escalera v. Lunn, 361 F.3d at 743.[16]

---

[14]    See also, e.g., Cerbelli v. City of New York, No. 99-CV-6846, 2008 WL 4449634 at *11 (E.D.N.Y. Oct. 1, 2008); Whittle v. Westchester County Police Dep't, 06 Civ. 3665, 2008 WL 919348 at *2 (S.D.N.Y. Mar. 28, 2008); McCray v. City of New York, 03 Civ. 9685, 03 Civ. 9974, 03 Civ. 10080, 2007 WL 4352748 at *18 (S.D.N.Y. Dec. 11, 2007); Yates v. City of New York, 04 Civ. 9928, 2006 WL 2239430 at *8 (S.D.N.Y. Aug. 4, 2006).

[15]    Accord, e.g., Guerrero v. Scarazzini, 274 Fed. Appx. 11, 12-13 (2d Cir. 2008); Morales v. City of New York, 209 Fed. Appx. 75, 76 (2d Cir. 2006); McCray v. City of New York, 2007 WL 4352748 at *18;  Chodkowski v. City of New York, 2007 WL 2717872 at *5; Carter v. City of New York, 427 F. Supp. 2d 307, 323-24 (S.D.N.Y. 2004); Jackson v. City of New York, 00 Civ. 1206, 2004 WL 895609 at *8 (S.D.N.Y. 2004).

[16]    Accord, e.g., Kilgore v. Kaufman, No. 06-CV-612, 2008 WL 4426616 at *7 (N.D.N.Y. Sept. 25, 2008); Rollins v. N.Y. State Div. of Parole, No. 03-CV-5952, 2007 WL 539158 at *5 (E.D.N.Y. Feb. 16, 2007); Payne v. County of Nassau, No. 03-CV-1929, 2005 WL 2179419 at *6 (E.D.N.Y. Sept. 9, 2005); Mura v. Erie County Sheriff Dep't, No. 03-CV-6093, 2005 WL 615754 at * 4 (W.D.N.Y. Mar. 16, 2005); Jackson v. City of New York, 2004 WL 895609 at *8; see, e.g., Provost v. City of Newburgh, 262 F.3d 146, 160 (2d Cir. 2001) (The "arguable probable cause" standard "protects 'all but the plainly incompetent or those who knowingly violate the law.'").

Although "[t]he existence of material factual disputes relating to the legality of [Cotto's arrest would] 'preclude[ ] a meaningful resolution of the qualified immunity defense at the summary judgment stage,'" Cooke-Harris v. Delgado, 05 Civ. 2081, 2007 WL 3256122 at *4 (S.D.N.Y. Oct. 30, 2007),[17/] the undisputed facts in this record demonstrate "arguable probable cause." It is undisputed that Cotto "made a 'nod' gesture" when the undercover, in Cotto's presence, asked Steward if he "was working for 'some manteca,'" and that the officers immediately encountered Cotto in the lobby of the same building where they went to conduct the drug transaction with Steward. (See pages 2-3 above.) Moreover, the undercover testified that Steward told the undercover that Cotto was his "boss." (See page 2 above.) Furthermore, there is no evidence, and Cotto does not allege, that the detectives knew or had any reason to believe that Cotto lived in the building where they arrested him and where the drug sale transpired, lending further credence to the officers' belief that Cotto was engaged with Steward in illegal drug activity. While the undisputed facts and the officers' resulting inferences just fail to support a finding of actual probable cause (which would serve as an absolute defense to Cotto's false arrest claim), they do support a finding of "arguable probable cause" justifying a finding of qualified immunity, because "officers of reasonable competence could disagree on whether the probable cause test was met." Escalera v. Lunn, 361 F.3d at 743. "Defendants have the burden of raising and establishing the affirmative defense of qualified immunity, at trial or on a motion for summary judgment." Sylvester v. City of N.Y., 385 F. Supp. 2d 431, 448 (S.D.N.Y. 2005), and while defendants' motion and reply papers

---

[17/]     See also, e.g., Johnson v. Ganim, 342 F.3d 105, 117 (2d Cir. 2003); Williams v. City of New York, 2007 WL 2214390 at *9; Reuland v. Hunes, No. 01 CV 5661, 2004 WL 1354467 at *12-13 (E.D.N.Y. June 17, 2004).

make few detailed arguments as to why defendants had "arguable probable cause" to arrest Cotto (see Defs. Br. at 20; Dkt. No. 45: Defs. Reply Br. at 10), this Court believes the facts speak for themselves.  Clearly, while other officers <u>may</u> have acted differently in the same situation, there was nonetheless arguable probable cause to arrest Cotto in connection with the drug transaction.

Defendants' summary judgment motion is therefore GRANTED as to Cotto's false arrest claim on qualified immunity grounds.

## II. DEFENDANTS ARE GRANTED SUMMARY JUDGMENT AS TO COTTO'S EXCESSIVE FORCE CLAIM ON STATUTE OF LIMITATIONS GROUNDS

### A.   Cotto's Excessive Force Claim is Time-Barred

Cotto's excessive force claim accrued at the time of his arrest on February 3, 2004, when, "[Cotto] kn[ew] or ha[d] reason to know of the injury which is the basis of his action." <u>Jefferson</u> v. <u>Kelly</u>, No. 06-CV-6616, 2008 WL 1840767 at *3 (E.D.N.Y. Apr. 22, 2008) (citing cases) (A "claim for excessive force accrues when the use of force occurred.").[18/]  The Southern District of New York Pro Se Office received Cotto's complaint in May 2007 (see page 3 above) – more than three months after the three year statute of limitations for Cotto's excessive force claim had run out.  Unlike Cotto's false arrest claim, Cotto's excessive force claim does not depend upon the outcome of Cotto's criminal case, for a finding of excessive force would not "necessarily imply

---

[18/]   See also, e.g., <u>Pearl</u> v. <u>City of Long Beach</u>, 296 F.3d 76, 80 (2d. Cir. 2002); <u>Cabrera</u> v. <u>City of Huntington Park</u>, 159 F.3d 374, 379-80, 380-81 (9th Cir. 1998) (excessive force claim occurred at time of the use of force); <u>Singleton</u> v. City of New York, 632 F.2d 185, 191 (2d Cir. 1980) (same), <u>cert. denied</u>, 450 U.S. 920, 101 S. Ct. 1368 (1981); <u>Perez</u> v. <u>Johnson</u>, 07 Civ. 3761, 2008 WL 2876546 at *2 (S.D.N.Y. July 23, 2008); <u>Subgidio</u> v. <u>Graiani</u>, 05 Civ. 4065, 2006 WL 648229 at *8 (S.D.N.Y. Mar. 16, 2006); <u>Diallo</u> v. <u>Williams</u>, 04 Civ. 4556, 2006 WL 156158 at *2 (S.D.N.Y. Jan. 20, 2006); <u>Pugh</u> v. <u>City of New York</u>, No. 01 CV 0129, 2002 WL 398804 at *2 (E.D.N.Y. Jan. 15, 2002); <u>Daniel</u> v. <u>Safir</u>, 175 F. Supp. 2d 474, 480 (E.D.N.Y. 2001), <u>aff'd</u>, 42 Fed. Appx. 528 (2d Cir. 2002).

the invalidity of his conviction or sentence," Covington v. City of New York, 171 F.3d 117, 122 (2d

Cir.), cert. denied, 528 U.S. 946, 120 S. Ct. 363 (1999).  See, e.g., Bourdon v. Vacco, No. 99-0261,

213 F.3d 625 (table), 2000 WL 637081 at *1 (2d Cir. May 17, 2000); Cabrera v. City of Huntington

Park, 159 F.3d at 380-81.[19/]

       Cotto's excessive force claim therefore is time-barred, unless saved by Cotto's claim

of equitable tolling.

### B.    Equitable Tolling Is Not Appropriate in Cotto's Case

       The Supreme Court has held that "[f]ederal courts have typically extended equitable

relief only sparingly" and that courts have "generally been much less forgiving in receiving late

filings where the claimant failed to exercise due diligence in preserving his legal rights."  Irwin v.

Dep't of Veterans Affairs, 498 U.S. 89, 96, 111 S.Ct. 453, 457-58 (1990).[20/]  "[E]quitable tolling is

permissible, but only 'in rare and exceptional circumstances, in which a party is prevented in some

---

[19/]    See also, e.g., Jackson v. Suffolk County Homicide Bureau, 135 F.3d 254, 257 (2d Cir. 1998) (reversing dismissal of excessive force claim pursuant to Heck because a finding that excessive force had in fact been used would not necessarily require the invalidation of the conviction); Jeanty v. County of Orange, 379 F. Supp. 2d 533, 543 (S.D.N.Y. 2005) (A "judgment in favor of plaintiff on his § 1983 [excessive force] action would not establish the invalidity of his conviction for Assault in the Third Degree" under Heck and Covington.); Sales v. Barizone, 03 Civ. 6691, 2004 WL 2781752 at *13-14 (S.D.N.Y. Dec. 2, 2004) ("[I]t is 'well established tha[t] an excessive force claim does not usually bear the requisite relationship under Heck to mandate its dismissal.'") (quoting Smith v. Fields, 95 Civ. 8374, 2002 WL 342620 at *4 (S.D.N.Y. Mar. 4, 2002)); Davis v. United States, 03 Civ. 1800, 2004 WL 324880 at *9 (S.D.N.Y. Feb. 19, 2004); Jeffreys v. City of New York, 99 Civ. 4602, 2000 WL 1459845 at *5 (S.D.N.Y. Sept. 29, 2000).

[20/]    See also, e.g., Baldayaque v. United States, 338 F.3d 145, 150 (2d Cir. 2003); Assil v. United States, 07 Civ. 11037, 2008 WL 4104026 at *6 (S.D.N.Y. Aug. 26, 2008); Selmanovic v. NYSE Group, Inc., 06 Civ. 3046, 2007 WL 950135 at *4 (S.D.N.Y. Mar. 28, 2007); Garba v. United States, No. 06-CV-381, 2006 WL 3197182 at *2 (E.D.N.Y. Nov. 3, 2006).

extraordinary way from exercising his rights.'"   Haghpassand v. Reuters America Inc., 120 Fed.

Appx. 859, 862 (2d Cir. 2005).[21]/

        The requirements for equitable tolling have been described in various ways in

different cases, but it invariably comes down to whether plaintiff was diligent and whether the

defendant somehow misled the plaintiff.  See, e.g., Ferrer v. Potter, 2005 WL 1022439 at *7; Francis

v. Elmsford Sch. Dist., 2005 WL 151924 at *8; Harrison v. Potter, 323 F. Supp. 2d 593, 601

(S.D.N.Y. 2004) ("In deciding whether to toll a time period for filing, courts seek to balance the

necessity of adhering to statutory procedural requirements with equitable considerations of

dismissing claims on technicalities. This Court is guided by some general factors to be considered

in these circumstances, namely, whether the plaintiff believes she has complied with the

requirements, whether there is evidence of any affirmative misconduct on the part of the defendant,

and whether the plaintiff received sufficient notice."); Avillan v. Potter, 01 Civ. 1648, 2002 WL

252479 at *3 (S.D.N.Y. Feb. 21, 2002) ("Equity will not actually lift the procedural bar, however,

unless the plaintiff shows that he (1) was unaware of or unable to meet his procedural obligations

(2) because of affirmative misconduct on the part of the defendant."); Chalom v. Perkins, 1998 WL

---

[21]/   See also, e.g., Gibson v. New York City Police Dep't, No. 98-7947, 201 F.3d 431 (table),
1999 WL 1070102 at *1 (2d Cir. Nov. 18, 1999) ("[E]quitable relief is extended sparingly.");
Ferrer v. Potter, 03 Civ. 9113, 2005 WL 1022439 at *7 (S.D.N.Y. May 3, 2005) (Peck, M.J.);
Francis v. Elmsford Sch. Dist., 04 Civ. 2687, 2005 WL 151924 at *4 (S.D.N.Y. Jan. 25,
2005), aff'd in relevant part, 442 F.3d 123 (2d Cir. 2006); Jenkins v. Potter, 271 F. Supp. 2d
557, 563 (S.D.N.Y. 2003) ("Equitable tolling has been applied 'only sparingly' in private
suits. . . .") (citing Irwin v. Department of Veteran Affairs); Moore v. Potter, 217 F. Supp.
2d 364, 373 (E.D.N.Y. Aug. 28, 2002) ("courts have permitted such [equitable] tolling 'only
sparingly'"); Chalom v. Perkins,  97 Civ. 9505, 1998 WL 851610 at *5 (S.D.N.Y. Dec. 9,
1998).

851610 at *5 ("Equitable tolling is not available when it is the fault of the claimant for failing to exercise due diligence in meeting the filing deadline.").

"'The burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff,' and courts are 'less forgiving in receiving late filings where the claimant failed to exercise due diligence in pursuing his legal rights.'"  Avillan v. Potter, 2002 WL 252479 at *3 (citations omitted); see also, e.g., Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 512 (2d Cir. 2002) ("[T]he burden of proving that tolling is appropriate rests on the plaintiff."); Ferrer v. Potter, 2005 WL 1022439 at *8; Lewis v. Connecticut Dep't of Corr., 355 F. Supp. 2d 607, 616 n.5 (D. Conn. 2005) ("Though defendants initially bear the burden of establishing the affirmative defense of failure to exhaust administrative remedies, once established, the burden shifts to plaintiff to provide facts sufficient to counter the affirmative defense, for instance, facts showing equitable tolling . . ."); Lloyd v. Bear Stearns & Co., 99 Civ. 3323, 2004 WL 2848536 at *10 (S.D.N.Y. Dec. 9, 2004) ("The plaintiff bears the burden of 'demonstrating the appropriateness of equitable tolling.'") (citing Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000)); Fields v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 301 F. Supp. 2d 259, 263 (S.D.N.Y. 2004) (same).

The Second Circut has explained the extraordinary circumstances - reasonable diligence standard with respect to the similar issue of equitable tolling of the AEDPA's limitations period:

> "To equitably toll the one-year limitations period, a petitioner must show that extraordinary circumstances prevented him from filing his petition on time, and he must have acted with reasonable diligence throughout the period he seeks to toll.  To show that extraordinary circumstances prevented him from filing his petition on time, petitioner must demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable

diligence, could have filed on time notwithstanding the extraordinary circumstances. Hence, if the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing."

Baldayaque v. United States, 338 F.3d at 150; accord, e.g., Forbes v. Walsh, 04 Civ. 5076, 2007 WL 54792 at *3 (S.D.N.Y. Jan. 9, 2007) (Peck, M.J.) (& cases cited therein), report & rec. adopted, 2007 WL 646267 (S.D.N.Y. Mar. 2, 2007).

Equitable tolling is not appropriate here.  First, while Cotto's amended complaint alleged that Myers & Galiardo "completely or in part misrepresented, misinformed and/or deceived" Cotto (Dkt. No. 4: Am. Compl. ¶ 2), in fact Cotto admitted at his deposition that neither the Galiardo firm nor anyone else misrepresented, misinformed or deceived Cotto.  (Dkt. No. 39: Francolla Aff. Ex. D: Cotto Dep. at 225-26.)

Second, even if "extraordinary circumstances" existed (which they do not), Cotto failed to act with reasonable diligence.  Cotto failed to keep Galiardo informed of his correct address, i.e., his prison address.  Cotto's failure prevented Galiardo from more timely contacting Cotto to inform him that he would not represent Cotto in bringing his § 1983 claims.  (See pages 4-5 & n.2 above.)[22/]  The delay in Cotto receiving Galiardo's November 30, 2006 letter directly resulted from Cotto's failure to exercise due diligence in preserving his legal rights, rendering equitable tolling inappropriate.[23/]

---

[22/]    Indeed, there is no evidence before this Court, other than Cotto's ipse dixit, that Galiardo ever agreed to represent Cotto (as opposed to considering whether to represent him).

[23/]    See also, e.g., Mason v. Pool, 554 F. Supp. 2d 391, 398 (W.D.N.Y. 2008) (stating that, "[w]hat delayed [petitioner] . . . were his own actions, which cannot constitute 'extraordinary (continued...)

Moreover, Galiardo's letters made clear that Galiardo previously had informed Cotto that there was a three year statute of limitations.  (Am. Compl. Exs. B-C.)  Cotto thus should have contacted Galiardo <u>before</u> the statute of limitations had run (on February 3, 2007) to be sure that the complaint had been filed.

Finally, even after Cotto receive Galiardo's two letters in February 2007, he did not file a complaint pro se until May 6, 2007 (Dkt. No. 2: Compl.), almost three months after he received Galiardo's letter.   Cotto attributes this delay, in part, to difficulties he had in accessing the correctional facility's law library, and in obtaining assistance in preparing his complaint.  (<u>See</u> pages 5-6 above).  These difficulties, however, are not "extraordinary," as they apply to most inmates. Courts within this circuit have uniformly found that such reasons do not justify equitable tolling. <u>See</u>, <u>e.g.</u>, <u>Cross</u> v. <u>McGinnis</u>, 05 Civ. 504, 2006 WL 1788955 at *5-6 (S.D.N.Y. Jun. 28, 2006) ("A petitioner's restricted access to library facilities does not merit equitable tolling" and "it is not an extraordinary circumstance when a prisoner does not receive legal assistance from prison law library clerks."); <u>Bonilla</u> v. <u>Ricks</u>, 00 Civ. 7925, 2001 WL 253605 at *2 (S.D.N.Y. Mar. 14, 2001) (Peck, M.J.); <u>Davis</u> v. <u>Artuz</u>, 99 Civ. 9244, 2001 WL 199454 at *3 (S.D.N.Y. Feb. 28, 2001) ("[P]etitioner

---

[23]/   (...continued)
circumstances' for purposes of the equitable tolling doctrine."); <u>Valencia</u> v. <u>United States</u>, 03 Civ. 5346, 97 Cr. 355, 2007 WL 2111074 at *4 (S.D.N.Y. July 13, 2007) ("Petitioner's assertion that her attorney refused to answer her letters and phone calls, preventing her from learning the outcome of her appeal for two years, provides no basis for equitable tolling. Petitioner did not show 'reasonable diligence,' because she does not explain why she did not try to learn about her appeal by any other means, such as writing to the clerk of court or contacting a different lawyer.") (internal citation omitted); <u>Calderon</u> v. <u>United States</u>, 05 Civ. 3553, 2006 WL 662332 at *3 (S.D.N.Y. Mar. 15, 2006) (pro se petitioner's ignorance of any perceived deficiencies in his lawyer's conduct was "the result of his own inexcusable neglect" and thus petitioner "failed to show that he is entitled to the benefit of equitable tolling").

claims to have had limited access to the law library and other judicial resources. Such conclusory assertions are not sufficient to trigger equitable tolling."); Asencio v. Senkowski, 00 Civ. 6418, 2000 WL 1760908 at *1-2 (S.D.N.Y. Nov. 30, 2000) (rejecting petitioner's claim of limited access to law library as a ground for tolling because "hardships associated with prison conditions do not constitute the rare circumstances under which equitable tolling is granted"); Martinez v. Kuhlmann, 99 Civ. 1094, 1999 WL 1565177 at *5 (S.D.N.Y. Dec. 3, 1999) (Peck, M.J.) ("An inability to speak, read or write English, alone or in combination with difficulty obtaining assistance in legal research from other prisoners or prison staff, is not sufficiently extraordinary to merit equitably tolling the AEDPA's one-year statute of limitations, since these are disabilities common to many prisoners.") (citing cases), report & rec. adopted, 2000 WL 622626 (S.D.N.Y. May 15, 2000); Rhodes v. Senkowski, 82 F. Supp. 2d 160, 172 n.7 (S.D.N.Y. 2000) (Buchwald, D.J. & Peck, M.J.) (citing cases).

        Cotto is not entitled to equitable tolling. Defendants' summary judgment motion is GRANTED as to Cotto's excessive force claim, on statute of limitations grounds.

## III. DEFENDANTS ARE GRANTED SUMMARY JUDGMENT ON COTTO'S § 1983 MALICIOUS PROSECUTION CLAIM

### A. Cotto's Malicious Prosecution Claim is Timely

        The statute of limitations for a § 1983 action – including malicious prosecution – is three years. (See cases cited on page 9 above.) The limitations period for § 1983 malicious prosecution claims starts to run only when the underlying criminal action is conclusively terminated in the plaintiff's favor. See, e.g., Heck v. Humphrey, 512 U.S. 477, 489-90, 114 S. Ct. 2364, 2374 (1994) ("[A] cause of action for malicious prosecution does not accrue until the criminal proceedings

have terminated in the plaintiff's favor."); Murphy v. Lynn, 53 F.3d 547, 548 (2d Cir. 1995) ("It is clear from our precedents that the applicable statute of limitations for § 1983 actions in New York is three years, and that, for claims based in malicious prosecution, this period starts to run only when the underlying criminal action is conclusively terminated.") (citations omitted), cert. denied, 522 U.S. 1115, 118 S. Ct. 1051 (1998).  On January 31, 2005, a jury found Cotto not guilty of third degree criminal sale of a controlled substance (see page 3 above), and Cotto filed his original complaint alleging malicious prosecution in May 2007.  (See page 3 above.)  Cotto, therefore, filed his complaint within the three year statute of limitations period that began to run when his underlying criminal action was terminated in his favor.

### B.    Legal Standard Governing Malicious Prosecution Claims

"The Second Circuit has held that '[f]reedom from malicious prosecution is a constitutional right that has long been clearly established.'" Winn v. McQuillan, 390 F. Supp. 2d 385, 389-90 (S.D.N.Y. 2005) (quoting Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003)). "Claims for . . . malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for . . . malicious prosecution under [New York] state law." Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003).[24/]  To state a claim for malicious prosecution under New York law, the plaintiff must show: (1) "the defendant initiated a criminal proceeding"; (2) the proceeding terminated in plaintiff's favor; (3) "there was no probable cause for the criminal charge"; and (4) the defendant acted maliciously.

---

[24/]    See also, e.g., Hansel v. Brazell, 85 Fed. Appx. 237, 238 (2d Cir. 2004); Boyd v. City of New York, 336 F.3d 72, 75 (2d Cir. 2003); Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003); Winn v. McQuillan, 390 F. Supp. 2d at 390.

Rothstein v. Carriere, 373 F.3d 275, 282 (2d Cir. 2004); see, e.g., Ramos v. City of New York, No. 06-5252-cv, 2008 WL 4810545 at *1 (2d Cir. Nov. 4, 2008); Simmons v. N.Y. City Police Dep't, 97 Fed. Appx. 341, 342 (2d Cir. 2004); Hansel v. Brazell, 85 Fed. Appx. at 238; Boyd v. City of New York, 336 F.3d at 76; Rohman v. N.Y. City Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000). For a malicious prosecution claim to rise to a constitutional level under § 1983, there must also be a post-arraignment seizure.  Jocks v. Tavernier, 316 F.3d at 136; see also, e.g., Singer v. Fulton County Sheriff, 63 F.3d 110, 116-17 (2d Cir. 1995), cert. denied, 517 U.S. 1189, 116 S. Ct. 1676 (1996).  New York law "'places a heavy burden on malicious prosecution plaintiffs. . . .'"  Rothstein v. Carriere, 373 F.3d at 282.

### C.    Cotto's  Malicious  Prosecution  Claim  Fails  Because  Of  The  Grand  Jury Determination Of Probable Cause

An indictment by a grand jury "'creates a presumption of probable cause'" to prosecute that defendant.[25/]  Rothstein v. Carriere, 373 F.3d 275, 282-83 (2d Cir. 2004).[26/]  "'The presumption

---

[25/]    This presumption of probable cause from the grand jury's indictment applies to malicious prosecution claims but not to false arrest claims.  McClellan v. Smith, 439 F.3d 137, 145 (2d Cir. 2006) ("[W]e look to New York law to determine whether a presumption of probable cause arising from a grand jury indictment can be a defense to these claims . . . '[T]he New York Court of Appeals has expressly held that the presumption of probable cause arising from an indictment "applies only in causes of action for malicious prosecution and is totally misplaced when applied in false [arrest] actions."'") (internal citation omitted; quoting Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003)) (quoting Broughton v. State, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 92-93, cert. denied, 423 U.S. 929, 96 S. Ct. 277 (1975)); accord, e.g., Hill v. Melvin, 05 Civ. 6645, 2006 WL 1749520 at *13 n.25 (S.D.N.Y. June 27, 2006) (Peck, M.J.); Reid v. City of New York, 00 Civ. 5164, 2004 WL 626228 at *7 n.4 (S.D.N.Y. Mar. 29, 2004), report & rec. adopted, 2004 WL 1488194 (S.D.N.Y. July 1, 2004).

[26/]    Accord, e.g., Boyd v. City of New York, 336 F.3d 72, 77 (2d Cir. 2003); Savino v. City of New York, 331 F.3d at 72; Colon v. City of New York, 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455 (1983); Ramashwar v. Espinoza, 05 Civ. 2021, 2006 WL 23481 at *7 (S.D.N.Y. Jan. 5, (continued...)

may be overcome only by evidence establishing that the police witnesses have not made a complete and full statement of facts either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith.'" Rothstein v. Carriere, 373 F.3d at 283 (quoting Colon v. City of New York, 60 N.Y.2d at 82-83, 468 N.Y.S.2d at 455-56).[27]

Thus, in order for a plaintiff to prove a malicious prosecution claim after having been indicted, "'he must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" Rothstein v. Carriere, 373 F.3d at 283 (quoting Colon v. City of New York, 60 N.Y.2d at 83, 468 N.Y.S.2d at 456).[28]

---

[26]    (...continued)
        2006) (Peck, M.J.), aff'd, 231 Fed. Appx. 26 (2d Cir. 2007).

[27]    See also, e.g., Boyd v. City of New York, 336 F.3d at 77; Savino v. City of New York, 331
        F.3d at 72; Rodriguez v. City of New York, 05 Civ. 10682, 2008 WL 4410089 at *13
        (S.D.N.Y. Sept. 25, 2008); Stewart v. City of New York, 06 Civ. 15490, 2008 WL 1699797
        at *8 (S.D.N.Y. Apr. 9, 2008); Perez v. City of New York, No. 01-CV-5384, 2007 WL
        14486 at *11 (E.D.N.Y. Jan. 3, 2007); Alvarado v. City of New York, No. CV-04-2558,
        2006 WL 2252511 at *3 (E.D.N.Y. Aug. 5, 2006).

[28]    Accord, e.g., McClellan v. Smith, 439 F.3d at 145; Savino v. City of New York, 331 F.3d
        at 72; Celestin v. City of New York, No. 04-CV-3009, -- F. Supp. 2d --, 2008 WL 4560562
        at *12 (E.D.N.Y. Oct. 12, 2008); Washpon v. Parr, 561 F. Supp. 2d 394, 405 n.38 (S.D.N.Y.
        2008); Chodkowski v. City of New York, 06 Civ. 7120, 2007 WL 2717872 at *6 (S.D.N.Y.
        Sept. 11, 2007); Martinez v. Golding, 05 Civ. 7433, 499 F. Supp. 2d 561, 570 n.13 (S.D.N.Y.
        2007); Ramashwar v. Espinoza, 2006 WL 23481 at *7.

        Alternatively, the presumption "'can be overcome by a showing by claimant that the
        conduct of the police deviated so egregiously from acceptable police activity as to
        demonstrate an intentional or reckless disregard for proper procedures.'" Williams v. City
        of New York, 02 Civ. 3693, 2003 WL 22434151 at *6 (S.D.N.Y. Oct. 23, 2003) (Motley,
        D.J.), aff'd, 120 Fed. Appx. 388 (2d Cir. 2005); accord, e.g., Ramashwar v. Espinoza, 2006
        WL 23481 at *7.

Here, Cotto was indicted by a grand jury (see page 3 above), and thus must rebut the presumption that there was probable cause to prosecute him.  Cotto argues that defendants lacked probable cause to arrest him and to establish sufficient evidence to prosecute him.  Cotto's argument entirely depends upon defendants' failure to find any drugs or prerecorded money on Cotto, defendants' admissions that they did not see Cotto help anyone sell drugs, and Cotto's claim that defendants misinterpreted Cotto's gestures and assumed that he was communicating with Steward. (Dkt. No. 4: Am. Compl. ¶¶ 20, 25-27.)  Cotto concludes that this evidence demonstrates that defendants provided false information to prosecutors.  (Am. Compl. ¶¶ 6-8.)  Cotto, however, does not explicitly state what "false information" defendants provided to prosecutors, while conclusorily stating that defendants willfully prosecuted him knowing that they lacked probable cause to do so. (See Dkt. No. 33: 2d Am. Compl. at 2 ¶ 6, 3 ¶ 9, 4 Wherefore ¶ 3.)  Cotto, however, must present more than "'mere 'conjecture' and 'surmise' that his indictment was procured as a result of conduct undertaken by the defendants in bad faith'" to rebut the presumption of probable cause. Reid v. City of New York, 2004 WL 626228 at *7 (quoting Savino v. City of New York, 331 F.3d at 72); see also, e.g., Simmons v. New York City Police Dep't, 97 Fed. Appx. 341, 343 (2d Cir. 2004) ("Although [plaintiff] testified that the arresting officer . . . told him that the officers would falsify evidence and manipulate line-ups in order to implicate him, this allegation is not, without more, sufficient to raise an inference that the indictment was procured by fraud or bad faith conduct."); Ramashwar v. Espinoza, 2006 WL 23481 at *8; Scully v. City of Watertown, No. 7:03 CV 846, 2005 WL 1244838 at *11 (N.D.N.Y. May 25, 2005) ("The simple assertion that [plaintiff] was acquitted and therefore the officers must have lied is insufficient to overcome the presumption created by the grand jury's indictment . . ."); Montes v. King, 00 Civ. 4707, 2002 WL 1808209 at *3

n.5 (S.D.N.Y. Aug. 6, 2002) ("[U]nsubstantiated speculation" that officer acted in bad faith is not enough to survive summary judgment.); Jenkins v. City of New York, 98 Civ. 7170, 98 Civ. 7338, 1999 WL 782509 at *9, 11 (S.D.N.Y. Sept. 30, 1999) (despite later-discovered perjury by a civilian witness at the grand jury, plaintiff "failed to produce any evidence of intentional police misconduct and his allegations are contradicted by the affidavits and contemporaneous documentary record in support of the motion.  [Plaintiff] has thus failed to rebut the presumption that probable cause to commence the proceeding existed."), aff'd, 216 F.3d 1072 (2d Cir. 2000).

Cotto's argument proves merely that there were two versions of the incidents in the Chinese restaurant and in the lobby of 1760 Lexington Avenue – (1) Cotto's and (2) the defendant police officers'.  Conflicting testimony between Cotto and the defendant officers (or conflicting inferences from undisputed facts) is not sufficient to rebut the presumption of probable cause.  See, e.g., Brazeau v. Zon, No. 04-CV-031, 2007 WL 2903617 at *12 (W.D.N.Y. Oct. 1, 2007) ("[C]onflicting testimony between the malicious prosecution claimant and the police defendants and other prosecution witnesses is insufficient to rebut the presumption of probable cause.") (citing cases); Hill v. Melvin, 2006 WL 1749520 at *14 (Plaintiff "must present more than mere conjecture and surmise that his indictment was procured as a result of conduct undertaken by the defendants in bad faith to rebut the presumption of probable cause.") (citations & internal quotations omitted); Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411, 422 (S.D.N.Y. 2002) ("The record is barren of evidence (as opposed to conclusory allegations) to overcome the presumption created by the indictment. [Plaintiff] asserts that [the defendant officer] perjured himself, but that conclusory allegation is insufficient to overcome this strong presumption. . . . [Moreover,] '[t]he existence of a "swearing contest" between plaintiff as to his innocence and an eye-witness as to the events "cannot

Case 1:07-cv-07656-AJP   Document 47   Filed 11/20/08   Page 32 of 33

of itself render the issue of probable cause a jury question.'"'"); DiMascio v. City of Albany, No. 93-CV-0452, 1999 WL 244648 at *3 (N.D.N.Y. Apr. 21, 1999) (contradictions between plaintiff's and defendant's trial testimony "is insufficient to give rise to an inference of fraud, perjury or the withholding of evidence and is probative of little more than a disagreement over the turn of events" on the date of plaintiff's arrest.), aff'd, 205 F.3d 1322 (2d Cir. 2000).

The fact that Cotto's version of the incident contradicts that of the officers is not enough to present an issue of fact as to the probable cause element of Cotto's malicious prosecution claim.  If it were, any time there were conflicting versions of an incident and the criminal trial resulted in a not guilty verdict, the arresting officers could be sued for malicious prosecution, despite a grand jury finding of probable cause.  That is not the state of the law, nor should it be.  See, e.g., Hill v. Melvin, 2006 WL 1749520 at *15; Ramashwar v. Espinoza, 2006 WL 23481 at *9.

Moreover, Cotto has not supplied the Court with any grand jury testimony.  Indeed, Cotto admits that he does not even know whether any of the defendants testified before the grand jury.  (Defs. Rule 56.1 Stmt. ¶¶ 32-34; Dkt. No. 39: Francolla Aff. Ex. D: Cotto Dep. at 183-84.) Rather, Cotto admitted that he included the defendants' names in his complaint because they were mentioned in the arrest paperwork.  (Defs. Rule 56.1 Stmt. ¶ 30; Francolla Aff. Ex. D: Cotto Dep. at 183.)  The Court thus has no idea which defendants, if any, testified, nor what their grand jury testimony was.  See e.g., Rothstein v. Carriere, 373 F.3d at 284 ("The burden of rebutting the presumption of probable cause requires the plaintiff to establish what occurred in the grand jury, and to further establish that those circumstances warrant a finding of misconduct sufficient to erode the 'premise that the Grand Jury acts judicially[.]' Here, the content of [defendant's] grand jury testimony is unknown, as is the content of the rest of the government's presentation."); Scully v. City of

H:\OPIN\COTTO

Watertown, 2005 WL 1244838 at *11 (Plaintiff failed to overcome presumption of probable cause because "[p]laintiff merely assert[ed], in wholly conclusory fashion, that [defendants] must have lied before the grand jury because he was eventually acquitted.  However, Plaintiff neither provides defendants' grand jury testimony, nor points to any specific trial testimony that is purportedly false.") (citation omitted).  Since Cotto has not provided any of the defendants' grand jury testimony, Cotto has not satisfied his burden in rebutting the presumption that defendants had probable cause to prosecute him.

Accordingly, defendants' summary judgment motion is GRANTED as to Cotto's malicious prosecution claim.

## CONCLUSION

For the reasons discussed above, defendants' summary judgment motion is GRANTED.  The Clerk of Court is to enter judgment dismissing the case.

SO ORDERED.

Dated:      New York, New York
            November 20, 2008

_____
Andrew J. Peck
United States Magistrate Judge

Copies to:    Eddie Cotto
              Brian Francolla, Esq.

H:\OPIN\COTTO